Anthony F. Tagliagambe, Esq.
LONDON FISCHER LLP
*Attorneys for Plaintiff*
GREAT AMERICAN ASSURANCE, CO.
59 Maiden Lane
New York, New York  10038
Phone:  (212) 972-1000
Fax:     (212) 972-1030

**'07 CIV  9657**

**JUDGE KARAS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

GREAT AMERICAN ASSURANCE, CO.,                    07 CIV._____

                Plaintiff,                    **COMPLAINT**

        -against-                    **JURY TRIAL DEMANDED**

FERNO AUSTRALIA PTY. LTD.,

                Defendant.
-------------------------------------------------------------------- x

Plaintiff Great American Assurance Co., through its attorneys London Fischer,

LLP, as and for its Complaint alleges the following:

**NATURE OF THE ACTION**

    1.    This is an action seeking money damages relating to the unfortunate death

of a thoroughbred horse caused by defendant's defective product.

    2.    Defendant is a foreign manufacturer of, among other products, veterinary

rehabilitation equipment.  Defendant does substantial business in the United States and in New

York State.  In particular, defendant manufactures a product known as an "AquaPacer", which is

an equine underwater treadmill system used to rehabilitate horses.

    3.    Plaintiff's subrogor brought her horse, Coco Chanel, to a farm in New

Jersey after the horse suffered a minor ligament injury.  She was brought to the farm to undergo

rehabilitation for the minor injury. Coco Chanel was placed in an AquaPacer. When the horse became agitated, she stopped walking on the treadmill and became wedged against a bar that is attached to the rear of the AquaPacer. Coco Chanel suffered major damage to her vertebral column. Eventually, the horse was humanely euthanized because of the severe injuries caused by the defective AquaPacer.

      4.      Plaintiff, as the subrogee of Coco Chanel's owner, now seeks to recover damages from defendant because the proximate cause of the horse's death was defendant's defective product. Defendant's AquaPacer was improperly designed, manufactured and/or labeled, making the product unreasonably dangerous for its intended and foreseeable uses.

## THE PARTIES

      5.      Plaintiff Great American Assurance Co. ("Great American") is an Ohio corporation with its principal place of business at 580 Walnut Street, Cincinnati, Ohio. Great American is involved in the business of underwriting property and casualty insurance.

      6.      Upon information and belief, defendant Ferno Australia Pty. Ltd. ("Ferno") is an Australian corporation having its principal place of business at 11 Johnstone Road, Brendale QLD 4500, Commonwealth of Australia. Ferno touts itself as "a leading developer, manufacturer and global distributor of equipment designed to enhance the skills and performance level of its users." One of the areas in which Ferno provides products is veterinary rehabilitation and performance enhancement.

## JURISDICTION AND VENUE

      7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(b). Plaintiff is a citizen of the state of Ohio and defendant is a citizen or

subject of a foreign state, the Commonwealth of Australia. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.    Venue is proper in this District pursuant to 28 U.S.C. 1391(a)(1) & and (c), as Ferno "resides" in this District because it is subject to personal jurisdiction within the State of New York.

9.    Ferno does and has been doing business in the State of New York on a continuous, permanent, and systematic basis.  For example, Ferno has a sales representative, George Hunter, located in Chester, New York. Upon information and belief, the AquaPacer involved in the death of Coco Chanel was purchased through Mr. Hunter.

## THE RELATIONSHIP BETWEEN PLAINTIFF AND COCO CHANEL

10.    Great American provided equine casualty insurance to Tami Hoag under a policy numbered 6426242 (the "Policy").  One of the horses owned by Ms. Hoag, and, insured through Great American was Coco Chanel, a Rheinlander mare.

11.    Great American's casualty policy with Tami Hoag provided for a limit of liability in the amount of $600,000.

12.    After Coco Chanel was euthanized, Tami Hoag made a claim with Great American under the Policy.  Great American paid $600,000 to Tami Hoag pursuant to the terms of the Policy for the death of Coco Chanel.

13.    Under the terms of the Policy, and by operation of law, Great American is subrogated to the rights of Tami Hoag to the extent of $600,000, in relation to the death of Coco Chanel.

## THE DEATH OF COCO CHANEL

14.    On or about June 11, 2007, Coco Chanel arrived at High Brass Farm's Equine Rehabilitation Facility located in Pittstown, New Jersey ("High Brass"). The horse had suffered a minor ligament injury and was sent to High Brass for rehabilitation.

15.    On June 12, 2007, the horse was placed in High Brass' AquaPacer Underwater Treadmill System, a treadmill in water machine manufactured by defendant, and purchased by High Brass.

16.    This was Coco Chanel's first time on the AquaPacer, and she became agitated and stopped moving while the machine continued to run.

17.    As a result, Coco Chanel became pinned against a bar in the rear of the AquaPacer known as a "Butt Bar." Coco Chanel's back was pressed against the Butt Bar, which did not release. The horse remained pinned for a period of time and then collapsed. Coco Chanel was unable to rise. Eventually, she was taken off the AquaPacer, placed in a trailer and was taken to Mid-Atlantic Equine Medical Center, a veterinary hospital.

18.    At Mid-Atlantic Medical Equine Center, Coco Chanel was diagnosed with acute hind limb paralysis. She was unable to stand.

19.    The next day, June 13, 2007, Coco Chanel was still unable to stand and was in pain whenever the prescribed analgesic wore off. Based on the continued hind limb paralysis and agitation, humane euthanasia was recommended and performed the evening of June 13th.

20.    A post-mortem evaluation confirmed that there was a luxation of the horse's vertebral column between the 17th and 18th thoracic vertebrae, with an associated extradural blood clot.

21.    Coco Chanel's death was proximately caused by the defective AquaPacer manufactured by Ferno.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Negligence)

22.    Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 21 as if fully set forth herein.

23.    At all material times, Ferno was and is in the business of designing, manufacturing, labeling, packaging, advertising, marketing, selling and distributing veterinary rehabilitation equipment.

24.    Ferno designed, manufactured, labeled, packaged, advertised, marketed, sold, distributed and placed upon the market the AquaPacer that was used by High Brass to rehabilitate Coco Chanel.

25.    The AquaPacer, when it was purchased by High Brass, was intended to be used to rehabilitate horses.

26.    The AquaPacer was defective in its design, manufacture and labeling such that when it left the control of Ferno or its agents, the AquaPacer was unsafe for its intended use.

27.    The use and manner of use of the AquaPacer to rehabilitate Coco Chanel was reasonably foreseeable, and it was reasonably foreseeable that horse owners, veterinarians, equine rehabilitators, and other members of the general public would rely on the safety of the product and that the product was safe for its intended use.

28.    Ferno owed a duty of care to all individuals, including Coco Chanel's owner, whose veterinarians and/or equine rehabilitators were likely to use or direct the use of the AquaPacer to rehabilitate their horses.

29.    Ferno breached its duty to Coco Chanel's owner and was negligent in the manner set forth below.

30.    The negligence of Ferno, which was a proximate cause of the death of Coco Chanel, and of the damages resulting from the harm inflicted on Coco Chanel, was comprised of:

a.    designing, manufacturing, assembling, labeling, packaging, distributing, and/or selling, or causing to be distributed and sold to members of the public, including Coco Chanel's rehabilitation farm, the AquaPacer which was defectively designed, manufactured, assembled, labeled and packaged;

b.    designing, manufacturing, assembling, labeling, packaging, distributing, and/or selling, or causing to be distributed or sold, to members of the public, including Coco Chanel's rehabilitation farm, the AquaPacer which Ferno knew or in the exercise of due care and diligence should have known was not suitable or safe for its intended or reasonably foreseeable purposes and/or was unreasonably dangerous to any horse, including Coco Chanel, that used the AquaPacer or reacted to the AquaPacer in a reasonably foreseeable manner;

c.    causing, allowing and permitting the AquaPacer and its appurtences and parts to be unfit for the use it was intended in that the product lacked the necessary qualifications, safeguards, and warnings to make the product proper for the use for which it was intended;

d.    failing to warn members of the horse-owning community and equine rehabilitators, including Coco Chanel's owner and Brass Farms of the dangers of AquaPacer, that the AquaPacer was defectively designed, manufactured, assembled, labeled and/or packaged, when used in a reasonably foreseeable manner and under all reasonably foreseeable circumstances;.

e.    failing to adhere to good manufacturing and design practices and adopt procedures appropriately designed to identify defects in the AquaPacer before sale and distribution;

f.    failing to discover and correct the above defects relating to the AquaPacer; and/or

g.      such other negligence as may be discovered by plaintiff during the course of discovery.

31.    The subject AquaPacer was defective when it left the custody and control of Ferno.

32.    As a proximate result of Ferno's negligence, Coco Chanel suffered severe injury and paralysis, necessitating her humane destruction.

33.    As a proximate result of the humane destruction of Coco Chanel, which humane destruction was caused by the negligence of Ferno, Coco Chanel's owner suffered economic losses including the loss of the monetary value of the horse, amounts invested in the horse, the opportunity to breed and/or race the horse and incurred veterinary and related expenses.

34.    By reason of Ferno's negligence, plaintiff is entitled to a judgment in the amount of $600,000, plus interest.

## AS AND FOR A SECOND CAUSE OF ACTION
(Breach of Implied Warranty and Fitness for Use)

35.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 34 as if fully set forth herein.

36.    Ferno impliedly warranted to any potential, ultimate user, and/or owner of a horse who was placed in the product, that its AquaPacer was of merchantable quality, safe, suitable and fit for its intended use.

37.    Ferno breached its implied warranties, because the subject AquaPacer was not of merchantable quality, was not safe, was not suitable and was not fit for its intended use, as evidenced by the death of Coco Chanel when the AquaPacer was being used for its intended purpose.

38.    By reason of Ferno's breach of implied warranty, plaintiff is entitled to a judgment in the amount of $600,000, plus interest.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Strict Liability)

39.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 38 as if fully set forth herein.

40.    At all times herein, Ferno designed, manufactured, formulated, assembled, packaged and/or labeled and placed or caused to be placed in the general stream of commerce, a product, the AquaPacer, that was unreasonably dangerous to horses.

41.    As a proximate result of Ferno's conduct, Coco Chanel's owner has sustained damages due to the death suffered by Coco Chanel.

42.    As a proximate result of Ferno's conduct, Coco Chanel was caused to suffer and was humanely destroyed, and the owner lost the present and future use of the horse.

43.    Ferno is strictly liable for the damages suffered by Coco Chanel's owner due to the defective designing, manufacturing, assembling, packaging and/or labeling of the AquaPacer, and for distributing and selling the defective AquaPacer.

44.    By reason of Ferno's conduct, plaintiff is entitled to a judgment in the amount of $600,000, plus interest.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (New Jersey Products Liability Act)

45.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 44 as if fully set forth herein.

46.    Ferno is a manufacturer and/or seller of a product, the AquaPacer, under the New Jersey Products Liability Act (the "Act"), N.J.S.A 2A:58C-1, et seq.

47.    The AquaPacer in which Coco Chanel was placed was not reasonably fit,

suitable or safe for its intended purpose, because the subject AquaPacer:

a)    deviated from the design specifications formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae; and/or

b)    failed to contain adequate warnings or instructions; and/or

c)    was designed in a defective manner.

48.    The injuries suffered by and subsequent death of Coco Chanel was

proximately caused by the defects of the subject AquaPacer.

49.    By reason of defendant's conduct, plaintiff is entitled to a judgment under

the Act in the amount of $600,000, plus interest.

WHEREFORE, Plaintiff Great American Assurance Company is entitled to relief as

follows:

1.    On its First Cause of Action, an award of damages in the amount of $600,000 plus interest;

2.    On its Second Cause of Action, an award of damages in the amount of $600,000, plus interest;

3.    On its Third Cause of Action, an award of damages in the amount of $600,000, plus interest;

4.    On its Fourth Cause of Action, an award of damages in the amount of $600,000, plus interest; and

5.    Granting plaintiff such other and further relief as this Court deems just and proper.

Dated: New York, New York
          October 29, 2007

Respectfully,

LONDON FISCHER LLP

By:    _____
          Anthony F. Tagliagambe (#3691)
          *Attorneys for Plaintiff*
          *Great American Assurance Company*
          59 Maiden Lane
          New York, New York 10038
          (212) 972-1000
          Fax: (212) 972-1030

TO:

FERNO AUSTRALIA PTY. LTD.
11 Johnstone Road
Brnedale QLD 4500
Commonwealth of Australia

336\142\pleadings\complaint